IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

ANGIE KOSTAKIS,

    PLAINTIFF

    vs

THE METROPOLITAN TRANSIT
AUTHORITY, a public entity,
METROPOLITAN TRANSIT AUTHORITY
POLICE OFFICERS"JOHN and
MARY DOES", in their individual
capacities and in their official
capacities, METROPOLITAN TRANSIT
AUTHORITY POLICE OFFICER "JOE"
LEONHARDT, Shield # 2222, in his
individual and official capacities,

    DEFENDANTS
_____

12 Civ 7108 (PGG)(GWG)
COMPLAINT
[JURY TRIAL]

I.  INTRODUCTION

1. This is a litigation which arises out of the
Plaintiff's stop and detention and custodial arrest on
Friday, August 17, 2012 at or about 7:00 P.M. at the Grand
Central Station Terminal facility and the force and all
associated therewith and the Plaintiff's detention in a
cell at that facility until she was transferred to
Manhattan Central Booking at or about 1:30 A.M. on August
18, 2012 where she was detained and maintained in custody
until the Plaintiff was released from the Manhattan Central
Booking Facility at or about 2:00 P.M. on August 18, 2012
without any appearance and without requirement of an
appearance at Court when and because the New York County
District Attorney's Office declined to prosecute and to
bring any formal charge against the Plaintiff.

2.  This is an action in which the Plaintiff seeks
relief for the violation of her rights as guaranteed under
the laws and Constitution of the United States and, as
well, under the laws and Constitution of the State of New
York.

3.   The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of her rights.

II. JURISDICTION

4.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the  First, Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

5.   The Plaintiff requests that the Court invoke pendent claim and pendent party jurisdiction.  The State law claims derive from the same occurrence and transaction which gives rise to the federal law claims and they have a common nucleus of operative fact with the federally based claims.

6.   The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

7.   This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

8.   Venue of this Court is properly invoked as the actions and conduct complained of herein took place within the geographic boundaries of the jurisdiction of this Court, and the Defendants have offices for doing business within the geographic boundaries of the jurisdiction of this Court.

9.   To the extent that there are prerequisites for the filing and pursuit of the pendent State law claims, the Plaintiff has met those conditions.

### III. THE PARTIES

10.   The Plaintiff is an American citizen and resident of the community of Bayville, the County of Nassau, and the State of New York.

11.   The Defendant Metropolitan Transit Authority is a public entity which was created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, has, among other powers, the power to maintain a police department for the purpose of enforcing the laws of the State of New York and providing for the safety of the patrons of the services which it provides for the public.

12.   Defendants "Joe" Leonhardt, Shield # 2222 and "John and Mary Does" are Metropolitan Transit Authority Police Officers and agents and employees of the Metropolitan Transit Authority.  Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York,  they were taken in and during the course of their duties and functions as Metropolitan Transit Authority Police Officers and as agents and employees of the Metropolitan Transit Authority and incidental to the otherwise lawful performance of their duties and functions as Metropolitan Transit Authority Police Officers and agents and employees of Metropolitan Transit Authority.

### IV. ALLEGATIONS

13.   This is a litigation which arises out of the Plaintiff's stop and detention and custodial arrest on Friday, August 17, 2012 at or about 7:00 P.M. at the Grand Central Station Terminal facility and the force and all associated therewith and the Plaintiff's detention in a cell at that facility until she was transferred to Manhattan Central Booking at or about 1:30 A.M. on August 18, 2012 where she was detained and maintained in custody until the Plaintiff was released from said Manhattan Central Booking Facility at or about 2:00 P.M. on August

18, 2012 without any appearance and without requirement of an appearance at Court when and because the New York County District Attorney's Office declined to prosecute and to bring any formal charge against the Plaintiff.

14.   The Plaintiff, who is an American citizen and resident of Bayville community, County of Nassau, State of New York, is forty nine [49] years of age.

15.   The Plaintiff's birth date is April 9, 1963.

16.   The Plaintiff is married.

17.   The Plaintiff has been married for thirteen years.

18.   The Plaintiff has no children.

19.   The Plaintiff is self employed in a marketing and sales position for a diagnostic facility services business in Queens, New York.

20.   The Plaintiff has been self employed for approximately two years.

21.   Prior thereto, the Plaintiff was employed in an account executive marketing and sales position for approximately thirteen years by another diagnostic services facility which was also located in Queens, New York.

22.   The Plaintiff was born and raised in Queens, New York.

23.   The Plaintiff attended, and graduated from, Flushing High School.

24.   The Plaintiff obtained a Bachelor's degree in Business Administration from Baruch College of the City University of the City of New York.

25.   The Plaintiff has worked in sales and marketing, in both the profit and not for profit worlds, for approximately twenty five years.

26.   With the advent of Occupy Wall Street, the Plaintiff, who has always been concerned about economic justice for all, became involved in activities associated with the Occupy Wall Street movement and activities.

27.   This is a Notice of Claim which arises out of the Plaintiff's stop and detention and custodial arrest on Friday, August 17, 2012 at or about 7:00 P.M. at the Grand Central Station Terminal facility and the force and all associated therewith and the Plaintiff's detention in a cell at that facility until she was transferred to Manhattan Central Booking at or about 1:30 A.M. on August 18, 2012 where she was detained and maintained in custody until the Plaintiff was released from said Manhattan Central Booking Facility at or about 2:00 P.M. on August 18, 2012 without any appearance and without requirement of an appearance at Court when and because the New York County District Attorney's Office declined to prosecute and to bring any formal charge against the Plaintiff.

28.   On August 17, 2012, the Plaintiff went to an Occupy Wall Street event which was taking place at the Grand Central Station terminal facility at or about 7:00 P.M.

29.   The Plaintiff understood that the Occupy Wall Street movement activity was to designed to demonstrate concern about and opposition to the United States Supreme Court's "Citizens' United" decision.

30.   The Plaintiff was aware of the activity because it had been publicized through social media outlets.

31.   It was understood that there would be no mechanized amplification of the activity at the Grand Central Location but, rather and consistent with the process employed by the Occupy Wall Street participants, a "mic check" by which individuals say and repeat, in ordinary voice, that which is being spoken.

32.   When the Plaintiff arrived, she was present, in the vicinity of the clock area in the main area of the Grand Central Station terminal facility observing a group of people who were associated with the Occupy Wall Street event.

33.   When the Plaintiff arrived and observed on the on-going activity, the Plaintiff, utilizing her cell telephone, began filming that which was taking place.

34.   There were many police officers present.

35.   It is believed that many, if not all, of the police officers were agents and employees of the Metropolitan Transit Authority although it is believed that there were New York City Police Department officers present and, as well, members of the National Guard.

36.   The Plaintiff was not interfering with the pedestrian traffic that was traversing in the location where she was observing the Occupy Wall Street event.

37.   The Occupy Wall Street event was simply a gathering of individuals at the location and the individuals were not interfering in the flow of pedestrian traffic in the Grand Central Station Terminal area where they were present.

38.   After observing the "speak out" for approximately five to ten minutes and without any prior notice of any activity to justify any kind of police action, the Plaintiff observed two individuals, who were holding balloons, being detained and arrested by police officers.

39.   It is believed that the two individuals arrested were a woman, whose name was Fanya Engler, and a male whose name was Albert.

40.   It is believed that the police officers were agents and employees of the Metropolitan Transit Authority.

41.   The Plaintiff observed the afore-described two individuals, then under arrest and in custody, being taken away from the location where they had been detained and arrested and taken into custody.

42.   The Plaintiff began to film the arrests of the afore-mentioned two individuals and decided to continue to film their custodial arrests and detention as they were being escorted down a long corridor off to the side of the main lobby area of the Grand Central Station Terminal facility where the Occupy Wall Street activity was taking place and where the arrests of the two individuals took place.

43.   The Plaintiff's aim was simply to see where the two individuals were being taken and to ensure their safety while the individuals were in custody and to the extent

that they were in an area that was open to the public (as
the area in the Grand Central Station Terminal facility
was).

44.   As the Plaintiff was nearing the end of the afore-
described corridor, a Metropolitan Transit Authority police
officer was placing a barricade by some stairs where the
two individuals, then in custody, were being taken.

45.   The Plaintiff, at some reasonable distance from
where the barricade was being placed, continued to film
behind the barricade.

46.   At that time the Metropolitan Transit Authority
police officer, who was placing the barricade, informed the
Plaintiff that she was required to turn her camera off.

47.   The Plaintiff observed that the Officer had
covered his name and shield number.

48.   The Plaintiff informed the afore-mentioned Officer
she was within her right to film the police action and all
associated therewith as she had been and was doing.

49.   The Plaintiff observed the Officer then take out
his own device and begin to take pictures of the Plaintiff,
this while he was still concealing his name and shield
number.

50.   The Plaintiff then informed the Officer that he
did not have the right to film or photograph the Plaintiff
unless she was engaged in some kind of criminal or
otherwise unlawful conduct, conduct in which she was not
then engaged and had not at any time been engaged since
arriving at the Grand Central Station Terminal facility.

51.   At that moment, the Officer grabbed the Plaintiff
by her arm and propelled her into an adjoining wall.

52.   People were observing the afore-described actions.

53.   A second officer then engaged the Plaintiff
regarding the incident.

54.   It is believed that the second officer was also a
Metropolitan Transit Authority police officer.

55.  It is believed that the second Officer's name was Officer Leonhardt, Shield # 2222.

56.  Initially Officer Leonhardt mentioned something about breaching the barricade and the Plaintiff indicated that she had not done so.

57.  Officer Leonhardt then mentioned something respecting disorderly conduct and the Plaintiff indicated that she had not been disorderly in any manner or fashion.

58.  The Plaintiff explained what had transpired and, after a very brief period, the second Officer indicated to the Plaintiff that she should file a complaint about the Officer who had directed her to turn off her camera, who had concealed his badge and shield number and who had commenced to film her and then grabbed the Plaintiff by the Plaintiff's arm and propelled her into the wall.

59.  The Plaintiff informed Officer Leonhardt, with whom she was engaged (as described), that she had no way of identifying the Officer because he had concealed his name and shield number.

60.  At that time Police Officer Leonhardt mentioned that a supervisor should be called.

61.  The Plaintiff indicated that she would like to speak with the Officers' supervisor.

62.  The Plaintiff, then, turned toward some of the individuals who were present and watching.

63.  At that point, her cell telephone rang and the Plaintiff's husband, Mark Kostakis, who was not then present at the location but was in the Grand Central Station Terminal facility, asked where she was and the Plaintiff informed him that she had just been assaulted by a MTA police officer and she was waiting to speak with a supervisor and to file a complaint.

64.  The Plaintiff described where she was and asked her husband to come to the location and to ask a National Lawyers Guild observer of the Occupy Wall Street activity to come to the location with her husband.

65.   Having concluded her brief exchange with her husband, the Plaintiff began to speak with some of the people then present who expressed their shock at what they had observed.

66.   Within a brief period, the Plaintiff heard a voice, coming from behind her, that she was under arrest and that she should put her hands behind her back.

67.   Although shocked, the Plaintiff complied with such asking at that time why she was being arrested.

68.   The Plaintiff was informed that she was being arrested for disorderly conduct although the Plaintiff had not been engaged in any kind of disorderly conduct.

69.   The Plaintiff was handcuffed and then escorted down the stairs, where the barricade was situated, by two Officers, one of whom was Officer Leonhardt.

70.   The handcuffs were tightly applied to the Plaintiff such that she felt serious pain.

71.   As she was being escorted away, the Plaintiff informed individuals at the location of her name.

72.   The Plaintiff was placed in a cell with Fanya Engler.

73.   The male, who had been arrested (as described), was in an adjoining cell.

74.   The Plaintiff was not permitted to see a supervisor although she had expected to be able to see and to speak with a supervisor as described above.

75.   The Plaintiff was fingerprinted and photographed.

76.   The Plaintiff was subjected to a frisk by a female officer although Officer Leonhardt was present when the frisk took place.

77.   The Plaintiff's cell telephone was seized.

78.   As noted, the two other individuals, who had been detained and taken into custody (as described), were also placed in a cell.

79.   The Plaintiff remained in the cell at the Grand Central Station terminal facility until approximately 1:30 A.M. on Saturday, August 18, 2012 when, along with the two other individuals, she was transported to Manhattan Central Booking where she was detained and maintained in custody until at or about 2:00 P.M. on Saturday, August 18, 2012.

80.   At that time, the Plaintiff was released from custody and informed she could leave.

81.   It is believed that the New York County District Attorney's Office declined to prosecute the Plaintiff and did not bring any formal charge against the Plaintiff.

82.   The Plaintiff did not appear at an arraignment.

83.   The Plaintiff was not directed, when released, to appear on any date at any court; and the Plaintiff did not receive a Summons or a Desk Appearance Ticket.

84.   The Plaintiff was simply freed from her detention and custody and allowed to leave.

85.   There was no basis for the stop and detention and eventual custodial arrest of the Plaintiff by the Metropolitan Transit Authority Police Officers, each of whom is an agent and employee of the Metropolitan Transit Authority.

86.   There was no basis, in fact or law, to frisk search the Plaintiff, to fingerprint the Plaintiff, or to photograph the Plaintiff.

87.   There was no basis, in fact or law, to take the Plaintiff into custody and to detain and imprison him at what is believed to be a Metropolitan Transit Authority police facility on a lower level at the Grand Central Station terminal facility.

88.   There was no basis, in fact or law, to arrest the Plaintiff.

89.   There was no basis, in fact or law, for the use of any force employed by the police officers as described herein by the Plaintiff including the propelling of the

Plaintiff into a wall and including the utilization of
handcuffs as a restraint of the Plaintiff.

90.  The use of force was in all respects unreasonable,
unnecessary, and excessive.

91.  While the actions and conduct of the Metropolitan
Transit Authority police officers were unlawful they were
taken in the course of their duties and functions and
incidental to the otherwise lawful performance of those
duties and functions as Metropolitan Transit Authority
Police Officers and as agents and employees of the
Metropolitan Transit Authority which Authority is a public
entity created under the laws and Constitution of the State
of New York to operate and maintain public transportation
in the City of New York and throughout the New York
metropolitan region.

92.  There was no probable cause for the arrest of the
Plaintiff.

93.  The Plaintiff was falsely arrested.

94.  The Plaintiff was subjected to assault and battery
and excessive force.

95.  The Plaintiff was otherwise subjected to an
unlawful invasion of her privacy.

96.  It is believed, moreover, that the Plaintiff was
arrested because of her exercise of her First Amendment
guaranteed rights of association with the Occupy Wall
Street movement and further because of her First Amendment
guaranteed right of reasonable petition and protest and,
associated therewith, the exercise of her First Amendment
right to photograph police action in a reasonable manner
and fashion and without interference whatsoever in the on-
going police action.

97.  It is believed that the actions and conduct herein
described were propelled by crime offense enforcement
initiatives of the Metropolitan Transit Authority which
initiatives are grounded in the philosophy of the "ends
justifies the means".

98.  It is believed that such crime offense enforcement
initiatives propel officers to seek out arrests where there

is no probable cause for such and no basis for the stop and detention of individuals and, by such, to generate arrest statistics and/or to otherwise make examples of individuals in the hope that such would act as a deterrence to others who are engaging in non criminal First Amendment speech protected activity.

99.   Moreover, it is believed that Metropolitan Transit Authority Police Officers are under pressure to meet quotas respecting stops, detentions and arrests as part of the afore-described crime offense enforcement initiatives.

100.   The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

101.   The actions, conduct, policies and practices, and custom violated the Plaintiff's rights under the laws and Constitution of the State of New York including an unlawful stop and detention, false arrest, excessive, unnecessary, and unreasonable detention, and unreasonable and unnecessary and excessive terms and conditions of his stop, detention, and custodial arrest, excessive and unnecessary, and unreasonable force, and the violation of the Plaintiff's rights, as guaranteed under the State Constitution, to association and the free exercise of speech.

102.   The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

103.   The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and including physical pain and suffering.

104.   The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

105.   The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

106.   The Plaintiff has no other ad equate remedy at law but for the institution of this litigation.

V.   CAUSES OF ACTION

A.   FIRST CAUSE OF ACTION

107.   The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by reference herein.

108.   The Plaintiff was unlawfully stopped and detained and excessively held in custody and falsely arrested and searched in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

109.   The Plaintiff suffered injuries and damages.

B.   SECOND CAUSE OF ACTION

110.   The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by reference herein.

111.   The Plaintiff was unlawfully stopped and detained and excessively detained and falsely arrested and searched in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

112.   The Plaintiff suffered injuries and damages.

C.   THIRD CAUSE OF ACTION

113.   The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114.   The Plaintiff was excessively detained and falsely arrested in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

115.   The Plaintiff suffered injuries and damages.

D.   FOURTH CAUSE OF ACTION

116.   The Plaintiff reiterates Paragraph #'s 1 through 115 and incorporates such by reference herein.

117.   The Plaintiff was excessively detained and falsely arrested in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

118.   The Plaintiff suffered injuries and damages.

E.   FIFTH CAUSE OF ACTION

119.   The Plaintiff reiterates Paragraph #'s 1 through 118 and incorporates such by reference herein.

120.   The Plaintiff was subjected to unreasonable, unnecessary, and excessive force in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

121.   The Plaintiff suffered injuries and damages.

F.   SIXTH CAUSE OF ACTION

122.   The Plaintiff reiterates Paragraph #'s 1 through 121 and incorporates such by reference herein.

123.   The Plaintiff was assaulted and battered and subjected to unnecessary, unreasonable and excessive force in violation of rights guaranteed to the Plaintiff under the laws and Constitution of the State of New York.

124.   The Plaintiff suffered injuries and damages.

G.   SEVENTH CAUSE OF ACTION

125.   The Plaintiff reiterates Paragraph #'s 1 through 124 and incorporates such by reference herein.

126.   The Plaintiff was subjected to a search in violation of rights guaranteed to the Plaintiff under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

127.   The Plaintiff suffered injuries and damages.

### H.   EIGHTH CAUSE OF ACTION

128.   The Plaintiff reiterates Paragraph #'s 1 through 127 and incorporates such by reference herein.

129.   The Plaintiff was subjected to a search in violation of rights guaranteed to the Plaintiff under the laws and Constitution of the State of New York.

130.   The Plaintiff suffered injuries and damages.

### I.   NINTH CAUSE OF ACTION

131.   The Plaintiff reiterates Paragraph #'s 1 through 130 and incorporates such by reference herein.

132.   The Plaintiff was subjected to the actions and conduct herein challenged because of her association with the Occupy Wall Street activities in violation of her rights of free speech and association as guaranteed under the First Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

133.   The Plaintiff suffered injuries and damages.

### J.   TENTH CAUSE OF ACTION

134.   The Plaintiff reiterates Paragraph #'s 1 through 133 and incorporates such by reference herein.

135.   The Plaintiff was subjected to the actions and conduct herein challenged because of her association with the Occupy Wall Street activities in violation of her rights of free speech and association as guaranteed under the laws and Constitution of the State of New York.

136.   The Plaintiff suffered injuries and damages.

### K.   ELEVENTH CAUSE OF ACTION

137.   The Plaintiff reiterates Paragraph #'s 1 through 136 and incorporates such by reference herein.

138.   The policies, practices and customs herein described propelled the actions and conduct herein. Those

policies, practices, and customs violated the Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

139. The Plaintiff suffered injuries and damages.

### L.  TWELFTH CAUSE OF ACTION

140. The Plaintiff reiterates Paragraph #'s 1 through 139 and incorporates such by reference herein.

141. The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

142. The Plaintiff suffered injuries and damages.

### M.  THIRTEENTHG CAUSE OF ACTION

143. The Plaintiff reiterates Paragraph #'s 1 through 142 and incorporates such by reference herein.

144. Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant Metropolitan Transit Authority, the Defendant Metropolitan Transit Authority is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the Metropolitan Transit Authority, pursuant to the doctrine of respondeat superior.

145. The Plaintiff suffered injuries and damages.

### N.  FOURTEENTH CAUSE OF ACTION

146. The Plaintiff reiterates Paragraph #'s 1 through 145 and incorporates such by reference herein.

147. When the Metropolitan Transit Authority represents its Officers in federal civil rights litigations alleging unconstitutional actions by its officers, it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

148.   It is believed that the Officer-employee executes a retainer which requires the Officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant Metropolitan Transit Authority.

149.   The Metropolitan Transit Authority is, under the circumstances, the real party in interest.

150.   The named and unnamed individual Defendants are employees and agents of the Metropolitan Transit Authority and their conduct, as described, was taken in the course of their duties and functions as Metropolitan Transit Authority Police Officers and, in their capacities as such, as agents and employees of the City of New York.

151.   Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

152.   The Plaintiff is entitled to recover against the Metropolitan Transit Authority for the conduct of its named and unnamed Officers under the federal claim jurisdiction pursuant to the doctrine of <u>respondeat</u> <u>superior</u>.

153.   The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       September 19, 2012

Respectfully submitted,

/s/James I. Meyerson____
JAMES I. MEYERSON
64 Fulton Street @ Suite # 502
New York, New York 10038
[212] 226-3310
[212] 513-1006/FAX
jimeyerson@yahoo.com
ATTORNEY FOR PLAINTIFF
BY:_____